Hillsborough,
No. 4661.

PAUL C. GRANT

*v.*

LAW & INGHAM TRANSPORTATION CO.

Argued June 4, 1958.
Decided July 1, 1958.

*Charles J. Lincoln* (by brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant.

LAMPRON, J. The only issue to be decided is whether defendant's motions for nonsuit and directed verdict should have been granted because plaintiff was contributorily negligent as a matter of law. The evidence therefore must be construed most favorably to the plaintiff. *Couture* v. *Woodworth*, 97 N. H. 344, 345.

He was driving a motorcycle in a westerly direction on Amherst Street about 11:30 P. M. on a warm summer night at a speed of between 25 and 30 miles per hour. The weather was fair. The headlight on the motorcycle was operating properly and was on low beam.

A terminal used by the defendant to store, load and unload trucks was located on the south side of said street. There were lights on the building illuminating an advertisement thereon. There was a light over an entrance to the garage and some flood lights on the building. The workmen at the terminal had portable lights on an extension cord to enable their being brought into the trucks while they were loaded or unloaded.

The street at the point of the accident was 50 feet wide. There were trucks and cars parked on either side of it narrowing the space available for travel to 30 feet.

When plaintiff was about 200 to 250 feet east of the place of accident he released the gas which slackened his speed. When he was 150 feet from the point of collision, of the several lights around the terminal there was one in particular inside it which was shining out through the door and getting him right in the face. As he got within 25 to 50 feet of the place of accident he noticed a "big truck very close in front of me . . . . As I did see the truck naturally the first thing I thought of was to look for a way around it . . . and I happened to notice that there was vehicles in front of the truck . . . and I didn't think there was room to go between them . . . . I just sort of instinctively jammed the brakes on and the back wheel locked and slid on the pavement and the motorcycle tipped over and slid under the truck." If the motorcycle had stayed up "I'm just about positive I could have stopped within 25 or 30 feet or I'll say within 50 feet."

The truck encountered by plaintiff was a one and a half ton Dodge with a van body. It was 22 feet long, 11 feet 6 inches high and 7 feet 10 inches wide. It was being backed from the north side of the street to the platform of defendant's terminal on the south. At the time of the accident it was across Amherst Street, straddling the yellow line in the center of the highway. It had no

lights on it and the lights on and about the terminal shone on the side of the truck away from the plaintiff thus placing the side he was facing in a shadow. Its aluminum body "was very dirty and it didn't show up very well in the darkness or the light either."

It is urged by defendant that the evidence establishes plaintiff's negligence as a matter of law and that the cases of *Fine* v. *Parella*, 92 N. H. 81, and *Tufts* v. *White*, 92 N. H. 158, are controlling on the issue.

In the *Fine* case plaintiff findably drove his car when he could not see ahead at a speed in disregard of precaution to avoid dangers in the form of obstructions whether innocently or negligently in his path. The court held that the jury could find him negligent on the evidence and stated that if the probability of encountering careless conduct on the part of others is so great that the ordinary person would prepare to meet it then it is careless not to do so. *Id.*, 83. Although a light interfered with his view the plaintiff in this case could observe vehicles parked on both sides of the street at the scene of the accident when he was some distance down the road. His speed was such that if his cycle had remained upright it could be found that he could have stopped in the distance in which he saw the truck. We cannot say as a matter of law under the circumstances that the probability of the plaintiff encountering an unlighted truck across the highway in front of him was so great as to induce the ordinary man of average prudence to take any more precaution than plaintiff did against such an eventuality. Plaintiff was entitled to rely upon the exercise of care by others until he had reason to expect differently. *Dane* v. *MacGregor*, 94 N. H. 294, 296.

In the *Tufts* case it was plaintiff's own claim that visibility at the top of a grade was limited to 20 to 30 feet by a patch of fog such as he had previously encountered into which he drove his automobile at a speed of at least 30 miles per hour requiring a stopping distance of at least 60 feet. Material differences between that case and the present one are apparent from the facts hereinbefore recited. The plaintiff in this case applied his brake as soon as the truck became visible. Given the distance in which he could stop his cycle and the nature of his view which permitted him to see parked cars on the side of the street, his speed of 25 to 30 miles per hour was not necessarily to be deemed unreasonable.

The burden of establishing contributory negligence was upon the defendant who was not entitled to a directed verdict on this issue

when a finding of negligence was not compelled as a matter of law. Defendant's motions for nonsuit and a directed verdict were properly denied. *Holt* v. *Grimard,* 94 N. H. 255; *Couture* v. *Woodworth,* 97 N .H. 344; *Moulton* v. *Company,* 100 N. H. 92.

*Judgment on the verdict.*

All concurred.